UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>v.  )  No. 21-MJ-436<br>  )<br>SEAN MICHAEL MCHUGH,  )<br>  )<br>  Defendant.  )<br>_____)  | |

## MOTION TO REVIEW MAGISTRATE JUDGE'S DETENTION DECISION

COMES now the defendant, Sean McHugh, by and through undersigned counsel, and pursuant to 18 U.S.C. §3145(b), and moves this Honorable Court to revoke the order of detention imposed on June 1, 2021 by the Honorable Kendall J. Newman, United States Magistrate Judge for the Eastern District of California.

## INTRODUCTION

Sean McHugh is a 34 year old citizen of the United States. He has lived in the Sacramento area all of his life along with many of his family members who are also citizens of the United States. He earned a G.E.D. and was just a few credits shy of earning an Associate's Degree. Mr. McHugh is a father to two teenagers -- his son who is 13 years old and the 12 year old son of his girlfriend of five years. He has had stable employment for the past 6 years working in construction and is studying to pass an exam so that he can obtain his own contractor's license in electrical services. He has also been financially supporting his family and building a strong relationship with his sons. Before the instant arrest, Mr. McHugh was residing in Auburn, California in the same residence he has been living in with his girlfriend

1

and her son for five years.

## BACKGROUND/PROCEDURAL HISTORY

On March 27, 2021, Mr. McHugh was arrested on a complaint alleging charges arising out of the events on January 6, 2021. *See* ECF Dkt. Nos. 1, 5. A detention hearing was held on June 1, 2021, and Mr. McHugh was held detained by the Honorable Kendall J. Newman who found him to be both a danger and a risk of flight. *See* Exhibit 1, Transcript at pg. 16. Magistrate Judge Newman relied on Mr. McHugh's "criminal history, including failures to appear on probation violation and then especially in light of the factual allegations in this case" *Id*. at pg. 21, and held him detained. The government argued that Mr. McHugh presented a danger to the community based on (1) nature of the instant allegations, (2) his criminal history, (3) and its concern about Ms. Hunt being an appropriate third party custodian. *Id*. at pp. 12-16. Although the government moved for detention based on danger to the community and risk of flight, it offered no evidence or argument that he poses a risk of nonappearance. Defense counsel then argued that (1) there is no identified an articulable threat to the community because five months had elapsed since January 6, 2021, and Mr. McHugh had violated no rule or law, (2) conditions could be placed to address his history of substance abuse, (3) Ms. Hunt is an appropriate third party custodian as she is employed and has a steady home, (4) other cases involving similar facts and charges of assault supported release, and (5) Mr. McHugh's criminal history overstates dangerousness. *Id*. at pp. 4-13. Nevertheless, the court ordered Mr. McHugh detained. The Court, however, invited the defense to move for reconsideration should they receive more information and was willing to consider release should the defense participate in an in-patient drug treatment program. *See* Exhibit 1, Transcript.

I.  **Standard of Review**

18 U.S.C. §3145(b) permits this Court to conduct a de novo review of the magistrate judge's detention order. *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017); *United States v. Karni*, 298 F. Supp. 2d 129, 130 (D.D.C. 2004). The district court must make its own *de novo* determination of the facts with no deference to the findings or legal conclusions of the magistrate judge. *United States v. Koenig*, 912 F. 2d 1190, 1192 (9th Cir. 1990); *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).

## II.     Governing Authority For Detention Hearings

Only in the "rare circumstances should release be denied," and any "doubts regarding the propriety of release should be resolved in the defendant's favor." *United States v. Gebro*, 948 F.2d 118, 1121 (9th Cir. 1991). The Bail Reform Act requires the Court to impose the "least restrictive" means of ensuring the appearance of the person and safety to the community. 18 U.S.C. §3142 (c)(1)(B). There is no presumption in favor of detention here and the defendant should be released unless the government establishes by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community, or, by a preponderance of the evidence, that no condition or combinations of conditions will reasonably assure the appearance of the defendant as required. See 18 U.S.C. § 3142 (e-f). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In assessing whether pretrial detention is warranted for dangerousness, the district court considers four statutory factors: (1) "the nature and circumstances of the offense charged," (2) "the weight of the evidence against the person," (3) "the history and characteristics of the person," and (4) "the nature and seriousness of danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142 (g)(1)-(4).

"Thus, a defendant's detention based on dangerousness accords with due process only insofar as the district court determines that the defendant's history, characteristics, and alleged criminal conduct make clear that he or she poses a concrete, prospective threat to public safety." *United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021), and the court must "identify an articulable threat posed by the defendant to an individual or the community," before it may detain an individual. "Detention cannot be based on a finding that the defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness." *Id*.

III.    Argument

    a. **Mr. McHugh poses no articulable threat to an individual or the community.**

The government based much of its argument emphasizing the alleged conduct of the defendant on January 6, 2021. The government pointed to a screen shot under paragraph 16 of the statement of facts where it shows an individual releasing a spray into the air. *Id*. at pg. 13. However, the screen shots do not support the government's argument. They do not show what was sprayed or whether the spray in fact reached or hurt anyone. *See* ECF Dkt. No. 1. The individual in the screen shot is not close to any law enforcement officers when releasing the spray. *Id*. This alleged conduct does not rise to the level of conduct in cases where the defendant has been detained, and defendants facing far more serious allegations have been released. In *United States v. Mark Leffingwell*, 1:21-cr-005, the defendant was released after he pushed past a wall of officers and repeatedly punched an officer with a closed fist.[1] Despite the direct physical contact, (and such conduct is absent here), Mr. Leffingwell was released. The government tried to suggest that Mr. McHugh "rammed" a line of officers with a large metal

---

[1] *See also United States v. Gina Bisignano*, 21-CR-036 (CJN) (alleged to be a "leader" of the insurrection and allegedly exclaimed, "We need weapons!" while pushing against the police line); *United States v. Christopher Alberts*, 1:21-cr-026 (CRC) (found carrying a fully loaded handgun and a bullet-proof vest).

4

pole, however the screenshots presented do not support this.  *See* Exhibit 1, Transcript at pg. 13.  The only fair interpretation of the photograph is that the individual was grabbing on to a part of the sign that crowd members were holding up.  *See* ECF Dkt. No. 1 at pg. 4.  The photograph does not portray Mr. McHugh "ramming" anything into anyone; it shows someone grabbing the pole on the sign from the bottom not towards the officers.  *Id*.

Equally unavailing is the government's argument that Mr. McHugh took on a "leadership" role because he had a megaphone and was yelling things at the officers.  *See* Exhibit 1, Transcript at pg. 13.  Many protesters carry a megaphone to be loud and its use does not necessarily mean they are leaders.  Mr. McHugh was not a part of the Proud Boys, the Oath Keepers, or any other identified organization.  Having and using a megaphone does not suggest he is a danger to the community.

Even the carrying of pocketknife, a Taser and zip ties while making way into the Senate Gallery, is insufficient to detain a person. *United States v. See Munchel* Order at pg. 5.  In reversing the district court, the Circuit noted that possessions of instrumentalities did not translate to risk to the community, especially if the record is absent of any evidence of violent act committed by the defendant. *Id*. at 18.  Nor does Mr. McHugh alleged use of bear spray support a finding of danger as there is insufficient evidence on the record to conclude that this spray came close to the officers.  Nor is there any evidence that the spray was dangerous.  In light of the absence of clear evidence that Mr. McHugh engaged in violence at the Capitol building, he must be released.  The government did not prove by clear and convincing evidence that there were no conditions could be set to protect the community.  In fact the evidence is to the contrary -- Mr. McHugh returned home and did not flee.  Nor was anyone in the community endangered for the five months it took for law enforcement to arrest him.

*United States v. Chad Jones*, 1:21-mj-076, also supports release. Mr. Jones is charged with assault on a police officer with the use of a deadly or dangerous weapon (a flagpole) and accused of repeatedly striking and breaking the glass of the doorway where Ashley Babbitt was shot and killed. The government did not seek Mr. Jones's detention and Magistrate Judge Harvey released him on special conditions. Mr. Vitali (*United States v. Vitali Gossjankowski*, 1:21-cr-123), is accused of assaulting a federal officer with a Taser and giving the officer a heart attack after being "Tased" multiple times in the neck. Here too, the government consented to release.

### b. This Court can set conditions of release that can reasonably assure the safety of the community.

While Mr. McHugh has a criminal history, it is not recent and consists of mostly misdemeanor convictions. *See* Pre-Trial Service Report. Many of his prior arrests are a decade old and some have unknown dispositions and are not convictions.[2] *Id*. at pp. 6-8. While his prior DUI history shows he suffers from alcoholism, Mr. McHugh has been in recovery and has had no driving incidents since 2018.

As the Circuit court in *Munchel* emphasized, conditions can be set to "disable the arrestee from executing that threat." *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021). For 5 months, Mr. McHugh disabled the threat himself; he complied with misdemeanor probation, participated in a DUI program (he has one class left), and lived a law abiding life. *See* Supplemental Pre-Trial Service Report. Mr. McHugh is in Alcohol Anonymous ("AA") and when he lapses he is honest about his failures to his probation officer. He disclosed use two weeks prior to his arrest but noted that he does not have a valid driver's license, and does not

---

[2] The magistrate court ordered pre-trial services to attempt to find more information on the unknown dispositions. The parties await an updated report from pre-trial services.

drive. He agreed to more intensive drug treatment.[3]

The allegations arising out of January 6, 2021 are a one-off. Americans, encouraged by the then President of the United States fed off of each other and there is little likelihood of such an occurrence again. Conditions that include: (1) no travel, (2) no use of social media, (3) GPS monitoring, (4) participation in substance abuse treatment, and (4) and participation in the High Intensity Supervision Program, would assure the Court that Mr. McHugh will continue to be the non-risk he was for the five months before his arrest in this case.

### c. The government did not prove by clear and convincing evidence that Mr. McHugh presents a risk of flight.

The government offered no evidence or argument that Mr. McHugh is a risk of flight. The magistrate court, nonetheless, found he was a risk of flight based on his prior failures to appear and his substance abuse history. But, failure to appear does not equal risk of flight and even if they did that conduct is at least a decade old (2011, 2009, and 2006). *See* Pre-Trial Services Report. Mr. McHugh was under no travel restriction despite being on probation and it was perfectly lawful for him to travel to Washington, D.C. His probation requires him to check in online and while he has had technical violations in the past, none make him a risk of flight. Should this Court find him to present a risk of flight, it can ameliorate the risk by ordering GPS monitoring.

Today, Mr. McHugh is employed, earns a decent income to support himself and his sons, and is current on his child support payments. *See* Exhibit 2, Letters of Support. Mr. McHugh has been building his relationship with his 13 year old son. Mr. McHugh's son's mother speaks to the strong relationship their son has with his father and how Mr. McHugh's

---

[3] Undersigned counsel discussed availability of in-patient drug treatment with his counsel in Sacramento, who advised that there is bed availability at two different facilities.

priority is to maintain stability for his son.  *See* Exhibit 2, Letters of Support, Letter from Amanda Donathan.

### d. Ms. Hunt is an appropriate third party custodian who can assure Mr. McHugh's compliance with his conditions of release.

Mr. McHugh's girlfriend, Amy Hunt, has agreed to serve as a third party custodian for Mr. McHugh.  She encourages Mr. McHugh's efforts to work hard, achieve his goals, attend treatment, and complete probation.  *See* Exhibit 2, Letters of Support, Letter from Amy Hunt. Ms. Hunt has stable employment, a stable residence, and understands the responsibility that accompanies being a third party custodian.  The notion that Ms. Hunt was unable to stop Mr. McHugh from relapsing in January is not indicative of failure.  *See* Exhibit 1, Transcript at pg. 9. Ms. Hunt was not a third party custodian and not charged with reporting a relapse to the Court at that time.  Relapse is a common step in recovery; what is important is how one deals with the relapse.  Here, the Court can be assured that both Ms. Hunt and Mr. McHugh will both inform and re-engage should there be even the slightest hint of alcohol use.  Nor should this Court belabor Ms. Hunt's failure to discuss her fraud conviction from 2012.  *Id*. at pg. 15.  Ms. Hunt was clearly unfamiliar with what pre-trial services was asking.  When she gained clarity, she explained her prior conviction to pretrial and now to the Court.  She explains the circumstances of that offense, her process of rehabilitation and her willingness to show Mr. McHugh how he can do the same.  Ms. Hunt is an appropriate third custodian.

## CONCLUSION

For the above reasons, Mr. McHugh respectfully requests that the Court revoke the order of detention in this matter and release him on strict conditions of pre-trial release.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/
_____

Maria N. Jacob
D.C. Bar No. 1031486
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
Maria_Jacob@fd.org